Mr. Justice Thotteh
delivered the opinion of the court.
A preliminary objection has been taken by the counsel for the bank,, that the'judgment of the court .below is notbpen to review or error. That no appeal or writ of error will lie from an opinion or judgment sustaining or refusing a motion of this kind. We are aware that it has been so decided in some of the other states; but it has been uniformly held otherwise in this’ state, both in the old supreme court under the constitution, of 1817, and in this court in several cases which have been brought before it. Walker’s Rep. 175, 215, 317. 2 Howard, 852. 3 do. 1. The practice of allowing writs of error-in such cases, is therefore too well settled to be disturbed, unless some stronger ground is offered against it than has yet been presented to the court.
From the record in this case it appears, that at the April term of the circuit court of Adams county, in the year 1837, the Bank of the United States obtained a judgment against Matthew D. Patton, for the sum of eleven thousand eight hundred and eighty-five dollars and forty-seven cents. A writ oí fieri facias was issued upon the same, which was levied on certain slaves, and a bond for the delivery of the property given by Patton and the other plaintiffs in error. The bond was forfeited, and returned so, together with the execution, to, the court from which it issued.’ On the first day of December of the same year, an execution was issued against Patton, and all the securities in the bond. This writ was re *234 turned levied on certain lands described in the sheriff’s return. On the 4th day of May, 1838, a venditioni exponas was issued; and at the October,term following, which was the term for the return of the venditioni exponas, the plaintiffs submitted to the court a motion to quash the execution, which was overruled. The motion was urged upon two grounds: first, that there was no judgment against Patton to support the execution; and secondly, if there was, it'was in .favor of the Bank of the United States, whereas the execution was in favor of the Branch Bank of the United States, at Natchez, &c.
The error relied on, is the judgment of the court upon the motion to quash the execution.. The same grounds which were relied on below, have been insisted upon in this court, and urged with great zeal and force. The confidence expressed, and no doubt felt by 'the able and experienced counsel' for the plaintiffs, in the soundness- of the principles upon which he has asked for a reversal of the judgment in this case, as well as its great importance to the parties and the country, have led .us tó a very careful examination of the questions . which have arisen' for our decision.
When this case was before us at a former term, it was examined on briefs and written ‘arguments merely, and it was then decided mainly upon the authority of. former adjudications of this court. The case of Weatherby v. Proby, 1 Howard, 98, seemed to us a case which fully embraced this, and we were accordingly governed by it. That case decided the limits within which, in questions of this sort, the enquiries of the court must be confined. It put the original judgment and execution entirely out of the question. Regarding that case, too, as falling within the settled rules of this court, as ‘we understood .them, for more than twenty yeárs, we did not think it then necessary to express at length our reasons for concurring in its conclusions, or to criticise upon its reasoning. We were, therefore, much gratified when our attention was called to this, subject again, upon the reargument of this cause, and especially at the very learned and scientific analogies of the questions involved. Considering the fact of the -frequent, nay, almost every day’s recurrence in our. circuit courts, of cases similar to the present, it is .surely.very desirable tó the whole *235 country that it should be determined upon grounds well understood, and under the guide of the best lights which can be had. Thus- admonished of the importance of our duties, and sensible of the great responsibility under which we act, wé have approached the labors before us with every disposition to diligence,-industry and patience. So that whether our conclusions be right or not, we shall at any rate be consoled by the' conviction, that they are the result of the best investigation .of-the subject, we have had in our power to bestow. ' ; . . ,
As the decision of this cause at the last--term, turned principally upon the preliminary question of the power of the court to extend- its enquiries to any proceedings which occurred' anterior to the forfeiture of the delivery bond, we have deemed it proper to consider and settle that point before we notice the other questions, for that we take to be the fpain enquiry before us. Delivery, or as. they are more- generally termed forthcoming bonds, for property levied on by an execution, are unknown to the common law. - They are creatures of statutory law, and to -the law. of their creation we must, therefore, look for the definition of their 'character, and their operation upon the rights, of the parties. By the act of 1-827, which was a modification merely of the act of 1822, the sheriff or Other -officer is required, upon the levy of an execution upon personal property, if tendered,-to take a bond with sufficient security from'the debtor, payable to the creditors^ reciting the service of such execution, and.the' amount due there'on, in a penalty equal to double the amount of such execution, &c. with condition to have the same property so levied on forthcoming on the day of-salé thereof,,'or to suffer the 'same to. remain -in the possession of, and at the risk of such debtor until that timeand if the- owners of such property, or defendant in-the execution, shall-fail to deliver up the same according to the condition of the bond, &c., such sheriff or other officer shall return the bond so forfeited, with the execution, to the. court, from which the same issued, on the return day thereof; and. every bond which'shall be forfeited, shall-have the force and effect of a judgment, and execution shall issue against all the obligors thereon, &c; The object of this law was to relieve the debtor from the inconvenience of .parting with the possession of the property, and the ex *236 pense of taking care of it between the ,levy and sale day. It is an indulgence granted to him. But this was not to be done at the hazard of the creditor, and the law is therefore cautious to provide for the security of the latter, by exacting good security for a compliance with the condition of the bond. If the property is delivered, the creditor is not injured, the. execution will then sell it; if it is not, his remedy is upon the bond, which then by the operation of the statute acquires- the character of a judgment. The creditor has lost the lien of the old judgment,, but he'is amply compensated by the new;,and more comprehensive lien of the statutory judgment. _
Here it may be proper to pause and enquire 'what effect the bond might have had upon the rights of the creditor, without the further provisions of the statute which give it the force of a judgment after a breach of its condition'. ' As it releases the levy, and restores the property to the debtor, it is tantamount to a satisfaction of the execution, and the creditor would be left to pursue his new remedy upon the bond. In the case supposed, the bond would be similar in its character.to a replevin bond, which has been held to be a substitute for the original judgment. Thus under the replevin law of Virginia, which provided that if the property taken in execution did not sell for two-thirds of its appraised value, the debtor might give bond, with security-, to^ay the debt within twelve months, it has been determined that if the money is not paid according to the stipulation in the bond, the creditor is not at liberty'to resort to a new execution on - the old judgment, but must pursue his remedy, on the bond. This was settled to be the law in.the tías?, of Dundass v. Taylor, 2 Wash. Rep. 92, and the court quashed the second execution.- The -court in that case held that the bond was the same thing as levying an effective or productive execution; it was in lieu of the judgment, and operated as a satisfaction, it was no doubt in view of this principle that .the framers of our statute^ saw proper to relieve the creditor from the delay and expensé of a second suit upon the bond, by giving to it after forfeiture, the force of a judgment against .all the obligors thereon, with a .consequent right to have execution bn the same, and also to provide -that no security should be taken on the execution which is sued out upon the new *237 judgment. Whilst this new judgment is in force, no proceedings can be had upon the original judgment. The security of the old judgment is merged in the higher security of the new one. It is the same in principle as though a second judgment was had in an action of debt upon the old judgment, or upon the bond after breach of its condition. Hence it has always been holden that the statutory judgment on the bond satisfies or extinguishes the original judgment. This is the express ground of the decision of this court in Witherspoon v. Spring, 3 Howard, p. 60.
The second execution was set aside for the identical reason assigned by the Court of Appeals in Virginia, in Dundass v. Taylor, to wit: that the original judgment was satisfied by the levy of an effective or productive execution. The decision of the court in Virginia has never been questioned, so far as we are informed; and surely the principle of that case holds with far greater force when applied to a case where the bond has ripened into a judgment against the obligors. These views are fully and very ably sanctioned in the case of Ramsay v. Lusk, 3 Munford, 434, which arose under the act of the Virginia legislature of 1769, in relation to forthcoming bonds; the provisions of which are the same with the act of this state. It is said that “ if the bond is forfeited, the execution is completely at an end; the bond assumes a new character; attains the dignity of a judgment, and becomes the foundation of a new procedure.” And the same principle has been mniformly recognized in that state whenever the question has been presented to her courts. Cook v. Piles, 2 Munford, 153. Downman v. Chinn, 2 Wash. 189. Echols v. Graham, 1 Call, 492.
The execution is thus held to have performed its functions and to be completely at an end, and the judgment to be satisfied, on the well settled doctrine of the common law; that by a levy to the amount of the execution, the defendant is discharged, and the creditor has no remedy but against the sheriff, 1 Salk. 322, and that the judgment is discharged by a seizure on a fieri facias. 1 Burr, 34. It is true that if the bond taken by the officer proves to be defective, the creditor may then resort to the original judgment, and is not confined to the single remedy at law against the officer. But as the legislature have by an express provision se *238 cured this right to go back to the judgment, it would appear that they were at least apprehensive that without such provision, the creditor must be confined to his remedy of an action against the .sheriff. This being as we conceive a well' established doctrine, the question arises whether the creditor is required to produce a regular judgment to support the proceedings under the perfect statutory judgment? Or in other words, whilst the judgment on the bond is in force, can the process resorted to by the creditor to enforce it and get execution of it be superseded for alledged irregularities in the original judgment? Can the court on a motion to set aside the execution on a forthcoming bond judgment, look for causes to sustain such motion, behind the bond or judgment itself? By the former decisions of this court, this new judgment, which is recorded by the law in the bond, was considered as possessing the qualities, and force of a judgment obtained in the ordinary modes of proceeding. Thus if the execution is not sued out within a year and a day, the plaintiff must resort to a scire facias, quare, &c. 3 Howard, 1. This decision was predicated upon the proposition that there is no connection between the proceedings under the first judgment and those under the second. It treated the original judgment as extinguished and satisfied. And this was the ground of the subsequent determination in the case of Witherspoon v. Spring, 3 How. 60. And hence it was that the case of Weathersby v. Proby, 1 How. 98, limited the inquiries of the court to the proceeding on the bond; and prohibited the parties from going behind it. But whilst it is conceded that the court cannot go behind the bond to inquire after irregularities merely in the original judgment, it may nevertheless inquire whether there be any judgment, and that there is a wide difference in this respect between a defective judgment and no judgment. We were much struck with the force of this argument; for if the original judgment be the foundation of the execution and bond, it appears highly reasonable to conclude, that if this foundation did not in fact exist, if there was no judgment, all proceedings under it must be null and void. And this view of the subject appeared to be fortified by the consideration, that the party might, notwithstanding the execution and levy, the bond and its forfeiture, have reversed the original judgment on error, when he would of course *239 be entitled to a restitution of all his rights,' or to a supercedeas, if final execution had not already been had.
In this view of the question, the argument not only has great weight, but appears to be conclusive, for it is difficult to apprehend any difference in the' effects of the reversal of a judgment on error, and of no judgment whatever. But upon examination, there appears to us to be seyeral insuperable difficulties in the way-of this conclusion. The original judgment can never be revised in the circuit court, being the same court, with concurrent jurisdiction. .If it cannot be revised in a proceeding ex directo, it cannot, of necessity, in a collateral proceeding. Hence it would seem that it could entertain' no inquiry in regard to the original proceedings. It could not, therefore, examine the judgment merely with a view to determine what might be the decision upon it in an appellant tribunal. If;the circuit courts should' once enter upon such enquiries, it would be impossible to define the boundaries of their jurisdiction; for they would, in all cases, be' required to distinguish between defects which render the judgment merely voidable, and cases where there was no judgment at all. And in the settlement of these' troublesome questions, they must of necessity exercise revising powers. In this conflict, the security of the creditor is rendered doubtful, if not worthless.
In the next place, the bond contains a new cause of action, which accrues from the day of its forfeiture, against the original debtor and the sureties. This cause of action, is confessed by the obligors, and the law confers upon it the most solemn evidence of a debt, by giving it the force of a judgment. To supersede 'its execution, for defects, in the original proceedings, is to permit the party to contradict his own deliberate confessions, and to surprise the creditor with objections which resolve’themselves into an alledged want of consideration for the bond. A circumstance of which, from the very nature of the objection, he must have been apprised when he executed the bond, and- suffered it to become invested with all the sanctions of a regular judgment. To permit this to. be done, would effectually open the door to endless litigation. Some such considerations as these, probably, induced the legislature to provide, that after the forfeiture of a forthcoming bond, no writ of error should be prosecuted to reverse the *240 original judgment. And this we regard as a complete answer to the argument of the plaintiffs, bottomed on the consideration that there is no original judgment against M. D. Patton. For if the appellate court is concluded by the new judgment on the bond in a direct proceeding, surely the circuit courts are concluded,- in a mere incidental or collateral enquiry.
In the views thus expressed, we have much confidence, not only upon general principles of reasoning upon the provisions of the statute, but because they seem to us to be sustained by very high authority. In the case of Edmonds v. Green, 1 Rand. 44, we understand the court to have decided against the application for relief, upon the principles we have laid down. In that case, Edmonds was only the appearance bail in the original action, and yet judgment was improperly entered against him at the time it was taken against his principal. Execution was sued out against him, and he gave a forthcoming bond, which was forfeited, and judgment taken against him and the other obligors. He applied for a supersedeas, and alledged the above grounds, but the court held that he could not be relieved. It is true, that in this case, there was a formal judgment of the court against Ed-monds ; but it is equally true, that the judgment, instead of being the conclusion of law, from the facts contained in the record, was a conclusion flatly forbidden by the facts before the court; yet the court held him bound by the judgment on the bond. In Downman v. Downman, 2 Call. Rep. 426, the cáse was that an execution was issued and levied upon the property of a person not a party to the original proceedings, and against whom no judgment was rendered, and he proposed to prove this fact to the court, but they would not listen to the proof. The opinion of the court does not furnish us with any reasoning; but whether they considered it inadmissible, on the ground that he was concluded by the admissions in the forthcoming bond, or that the original judgment could not come in question, it is equally applicable to the case at bar. Other cases in the same court might be cited, but we do not deem it necessary. Hence we feel constrained to acquiesce in the former decisions of this court upon this question.
In Proby’s case, the original judgment was more defective than the one against Patton, for the confession mentioned no sum, and *241 it was rendered with conditions, and there was no “ award of the judicial consequence which the law attaches to the facts.” Yet it was holden that the bond and its forfeiture, concluded the debtor from questioning its validity. The court can, therefore, only enquire whether the execution in this case is conformable to the bond. The only objection to this is, that it is in favor of the “ Branch Bank of the United States, at Natchez.” In this, however, it follows the recitals in the bond. We think as we did when this case was formerly before us, that the recital of the name of the office, or branch of the mother bank, where it is probable the debt was contracted, instead of that of the mother bank itself, neither vitiates the bond nor the execution.
The judgment must be affirmed.